IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY DALE BROWN, #221 622, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:18-CV-802-WKW |
| ) | [WO] |
| WARDEN STRICKLAND, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

**I. INTRODUCTION**

Pending before the court is Plaintiff's request for a preliminary injunction. Doc. 5. He seeks to enjoin Defendants from prohibiting him from filing criminal charges against an inmate who assaulted him pursuant to a "hit," and requests placement in protective custody because the hit did not "satisfy the contract" – *i.e.,* according to Plaintiff, "'[only] death of Mr. Brown'" is [] satisfactory." Doc. 5 at 3–4.

As directed, Defendants filed a response to Plaintiff's request for issuance of a preliminary injunction. Docs. 20, 28. In the response, Michael Strickland, Warden of Ventress Correctional Facility, states that he had no knowledge that an assault on Plaintiff would occur. At the time of the assault—on August 19, 2018—Plaintiff was housed in Ventress' Health Care Unit and had been so housed since December 7, 2017. After the assault, prison officials turned the matter over to the Investigations and Intelligence Division ("I & I"), which assigned an agent to the case. Strickland denies being made aware of a hit on Plaintiff prior to his being assaulted, and says that he received no copy of a hit letter and knew nothing about such a letter prior to the assault. Further, Strickland states that the only letter he has seen referencing a hit was the letter Plaintiff filed with

the court on November 9, 2018 (Doc. 20 at 7), a copy of which he received on November 13, 2018, from the Alabama Department of Corrections' Interim General Counsel. After reviewing the letter, Strickland noted that it identified no one specifically who had threatened Plaintiff's safety. Additionally, Strickland says that if Plaintiff knows of the true names of the individuals referenced in the letter, he has not provided them to him. Strickland indicates that it is difficult to protect Plaintiff from unnamed individuals, no matter where he is housed. Strickland says that, since the August 19, 2018 assault, Plaintiff has resided in the medical ward with only one minor incident. Plaintiff identified a problem with another inmate housed in the medical ward, but they have since signed an Inmate Compatibility Statement. After the two inmates signed the statement, they were both assigned to the medical ward for medical reasons and have since lived together amicably. Doc. 28-1.

Robert Lewis, the I&I agent assigned to investigate the threat against Plaintiff, has been unable to confirm any credible threat to Plaintiff's safety. Agent Lewis states that the assault on Plaintiff on August 19, 2018 by inmate Justin Randall occurred after Randall agreed to "88 (assault) Plaintiff in order to have a $200.00 drug debt he owed to the Aryan Brotherhood forgiven." Plaintiff remains housed in the medical unit, where Lewis says Plaintiff has indicated he feels safe being housed. Because Plaintiff said that his common-law wife had the original note containing the threat against him, Lewis contacted her, but she refused to provide him with a copy of the note without going through counsel. Lewis says that proper investigative protocols have been implemented regarding the August 2018 assault on Plaintiff and the investigation is ongoing. Doc. 20.

In response to Lewis' affidavit, Plaintiff says he never told the investigator that Justin Randall assaulted him, and conclusorily asserts that the investigator's affidavit is inaccurate, that

2

he interviewed Plaintiff in a manner designed to manipulate the court, and that he asked Plaintiff the same question in different ways. Doc. 20. In response to Strickland's affidavit, Plaintiff states that because the Aryan Brotherhood is a large organization, it is impossible to identify the individual who placed the hit on him, which makes protective custody the best place to house him. Doc. 30. Upon consideration, the court concludes that the motion for preliminary injunction is due to be denied.

## II. STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Plaintiff demonstrates each of these prerequisites: (1) a substantial likelihood of success on the merits; (2) irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Id.*; *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1354-55 (11th Cir. 1983). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"" as to the four requisites." *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Mem'l Hosp. Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the

3

party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.'" *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001)(quoting *Northeastern Fla. Chapter of Associated Gen. Contractors of America v. City of Jacksonville,* 896 F.2d 1283, 1284 (11th Cir. 1990).

### III. DISCUSSION

Plaintiff's motion for injunctive relief does not successfully make the demanding showing required for this extraordinary form of relief. First, Plaintiff has not shown a substantial likelihood of prevailing on the merits of his request that Defendants be enjoined from prohibiting his filing of criminal charges against his attacker, as he does not have a constitutional right to see his alleged persecutors punished for their conduct. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973 *see also Leeke v. Timmerman*, 454 U.S. 83 (1981); *Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir.1987).

Regarding Plaintiff's request for placement in protective custody, Plaintiff fails to show that a preliminary injunction is necessary to prevent irreparable harm. While the court takes Plaintiff's allegations of the threat of harm seriously, in view of Defendants' responses to Plaintiff's request for preliminary injunctive relief, and Plaintiff's replies, Plaintiff does not appear to be in imminent danger of being harmed at Ventress in his current housing assignment. Courts are generally hesitant to grant motions for injunctive relief that interfere with a prison's

4

administrative decisions, including inmate housing assignments or assignment of inmates to a specific facility. *See e.g., Freeman v. Fuller*, 623 F. Supp. 1224, 1227 (S.D. Fla. 1985) (finding that the placement of inmates inside a prison "is a matter peculiarly within the province of prison authorities' administrative duties" and that federal courts "accord great deference to administrative decisions rendered by prison authorities and will not interfere except in extreme cases"). The United States Supreme Court has warned that "in the absence of substantial evidence in the record" to indicate that the officials have exaggerated their response to [security or administrative considerations], courts should ordinarily defer to their expert judgment in such matters." *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979).

To establish irreparable injury, Plaintiff must show he will suffer harm that "cannot be redressed by a legal or an equitable remedy" through the ordinary course of litigation. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). At this juncture, the court finds no basis on which to override prison officials' judgment regarding Plaintiff's housing placement and their response to his allegations of possible harm. In addition, it is impossible to determine what burden an injunction would have on the Alabama Department of Corrections, and whether issuing an injunction would harm the public interest, because it is not fully apparent what Plaintiff's requested relief would involve, given his failure or inability to identify the source of the hit that he alleges remains in place. Under these circumstances, issuance of a preliminary injunction is not warranted in this case.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Motion for Preliminary Injunction (Doc. 5) be DENIED; and

2.  This case be referred to the undersigned for additional proceedings.

It is further

ORDERED that on **or before February 20, 2019**, Plaintiff may file any objections to this Recommendation. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which Plaintiff objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993);  *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 6th day of February, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge